SILER *et. al.*, CONSTITUTING THE RAILROAD COMMISSION OF KENTUCKY, *v.* LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 521.   Argued February 24, 25, 26, 1909.—Decided April 5, 1909.

Where the Federal questions raised by the bill are not merely colorable but are raised in good faith and not in a fraudulent attempt to give jurisdiction to the Circuit Court, that court has jurisdiction, and can decide the case on local or state questions only, and it will not lose its jurisdiction of the case by omitting to decide the Federal questions or deciding them adversely to the party claiming their benefit.

Where the bill not only alleges that the statute creating the commission, but also the order of the commission sought to be enjoined, deprives complainant of its property without due process of law, and also violates other provisions of the Constitution, the Circuit Court obtains

jurisdiction without reference to the particular violation of the Fourteenth Amendment.   *Barney* v. *City of New York,* 190 U. S. 430, distinguished.

The rule of this court is not to decide constitutional questions if the case can be decided without doing so; and when, as in this case, it can dispose of the case by construction of the statute and on the lack of authority given by such statute to make the order complained of, it will do so rather than on the constitutional questions involved.

Jurisdiction so extensive as to place in the hands of a commission power to make general maximum rates for all commodities between all points in the State is not to be implied, but must be given in language admitting no other reasonable construction, and this power cannot be found in the Kentucky Railroad Commission Act.

Notwithstanding the highest court of the State has not yet construed the statute involved, this court must, in a case of which it has jurisdiction, construe it.

The fact that the legislature of a State gives to a railroad commission no power to raise rates, but only power to reduce rates found to be exorbitant after hearing on specific complaint, is an argument against construing the statute so as to give the commission power to fix maximum rates on all commodities.

Where a railroad commission after a hearing on specific complaint as to a rate on a particular commodity makes a general rate tariff for maximum rates on all commodities which is beyond its statutory power, the whole tariff falls, and the rate on the tariff on the particular commodity will not be separately sustained.

The Kentucky railroad commission having, after a hearing on complaints that the rates on lumber were too high, attempted to impose a general maximum intrastate tariff schedule, and the statute creating the commission not giving it authority to make such a schedule, this court, without deciding whether either the statute or the order deprives the railroad companies of their property without due process of law, holds that the entire schedule of rates including those on lumber must fall as being beyond the jurisdiction of the commission to establish in that manner.

THE Louisville and Nashville Railroad Company, hereinafter called the company, filed its bill July 25, 1906, in the Circuit Court of the United States for the Eastern District of Kentucky, to enjoin the enforcement of a certain order made by the railroad commission of Kentucky (hereafter called the commission), providing what are termed maximum rates on

the transportation of all commodities upon the railroad of the company to and from all points within the State. In its bill. the company contended that the order as to rates of transportation was void, because it was, upon several stated grounds, in violation of certain named provisions of the Constitution of the United States, among them being the claim that the rates were so low as to be confiscatory. It was also contended that the statute was an interference, in its results, with interstate commerce. The company also contended (among other objections not of a Federal nature) that the commission had no power to make the order in question under a correct and proper construction of the state statute of March 10, 1900, under which the commission assumed to exercise the power to fix the rates provided for in its order.

The Circuit Court decided that such act, hereinafter fully set forth and called the "McChord Act," and also the order of the railroad commission of Kentucky complained of, irrespective of any claim that such order was confiscatory, violated the provisions of § 1 of the Fourteenth Amendment to the Constitution of the United States, prohibiting any State from depriving any person of property without due process of law and from denying to any person within its jurisdiction the equal protection of the laws, and that the order of the commission, so far as it was applicable to the company, was, therefore, null and void, and the special commissioner who had been appointed to take evidence in the case as to the character of the rates, and other matters, was directed to so report. (The court decided the case upon the authority of *Louisville &c. R. R. Co.* v. *McChord,* 103 Fed. Rep. 216, reversed on other grounds, 183 U. S. 483.)

A final decree having been made pursuant to the decision of the court, the commission appealed directly to this court from such decree. The proceedings which led up to the decree from which the commission has appealed, without the court passing upon the allegation of the confiscatory nature of the rates, were by means of a stipulation made in order to facilitate matters,

by reason of which the court decided as matter of law the order and act were both invalid, and it perpetually enjoined the enforcement of the order as to rates as well as the procuring of indictments against the officers of the company or the company itself.

The appellants disputed the jurisdiction of the Circuit Court upon the grounds which are particularly stated in the opinion herein, and they took issue on many of the material allegations contained in the bill of complaint.

The facts upon which the questions in this case arise are as follows: The company was duly incorporated under an act of the general assembly of the State of Kentucky, approved March 5, 1850. It has a large mileage, amounting to over 1,200 miles within the State, and it operates its road within the State in connection with other portions of its road in other States, having altogether in Kentucky and such other States a mileage of over 4,000 miles. It claims to have a contract right to fix rates as provided in its charter, and it contends that the order of the commission violates that right as well as other rights protected by the Federal Constitution.

The State adopted a new constitution on the twenty-eighth day of September, 1891, by § 209 of which the present railroad commission of the State was established.

It is asserted by the company, though such assertion is denied, that up to March 10, 1900, the commission or its predecessors had not been empowered by constitutional or statutory provision to regulate or fix the rate of compensation which a railroad company might charge for the service of transporting freight or passengers over its lines in the State. On the above-mentioned date the general assembly enacted what is generally called the "McChord Act," which is set forth in full in the margin.[1]

---

[1] An Act to prevent railroad companies or corporations owning and operating a line or lines of railroad, and its officers, agents and employés, from charging, collecting or receiving extortionate freight or passenger rates in this Commonwealth, and to further increase

The act has not been construed by the Court of Appeals, the highest court of the State of Kentucky, upon the question

and define the duties and powers of the railroad commission in reference thereto, and prescribing the manner of enforcing the provisions of this act, and penalties for the violation of its provisions.

SEC. 1. When complaint shall be made to the railroad commission accusing any railroad company or corporation of charging, collecting, or receiving extortionate freight or passenger rates, over its line or lines of railroad in this Commonwealth, or when said commission shall receive information, or have reason to believe that such rate or rates are being charged, collected or received, it shall be the duty of said commission to hear and determine the matter as speedily as possible. They shall give the company or corporation complained of not less than ten days' notice, by letter mailed to an officer or employé of said company or corporation, stating the time and place of the hearing of same; also the nature of the complaint or matter to be investigated, and shall hear such statements, argument or evidence offered by the parties as the commission may deem relevant, and should the commission determine that the company or corporation is, or has been, guilty of extortion, said commission shall make and fix a just and reasonable rate, toll or compensation, which said railroad company or corporation may charge, collect or receive for like services thereafter rendered. The rate, toll or compensation so fixed by the commission shall be entered and be an order on the record book of their office and signed by the commission, and a copy thereof mailed to an officer, agent or employé of the railroad company or corporation affected thereby, and shall be in full force and effect at the expiration of ten days thereafter, and may be revoked or modified by an order likewise entered of record. And should said railroad company or corporation, or any officer, agent or employé thereof, charge, collect or receive a greater or higher rate, toll or compensation for like services thereafter rendered than that made and fixed by said commission, as herein provided, said company or corporation, and said officer, agent or employé, shall each be deemed guilty of extortion, and upon conviction shall be fined for the first offense in any sum not less than five hundred dollars, nor more than one thousand dollars, and upon a second conviction, in any sum not less than one thousand dollars nor more than two thousand dollars, and for a third and succeeding conviction in any sum not less than two thousand dollars nor more than five thousand dollars.

SEC. 2. The Circuit Court of any county into or through which the

hereinafter discussed, nor has it been held valid as to all of its provisions, with regard to the constitution of the State or of the United States by any court, state or Federal.

After its passage, and in December, 1904, and January and February, 1905, one Guenther, a citizen of Owensboro, Kentucky, made complaints to the commission, in which he complained generally (but without specifying any in particular) that the rates charged by the company, and also by the Illinois Central Railway, and the Louisville, Henderson and St. Louis Railway Company, on interstate freight to and from Owensboro, as compared with the rates on like freight to and from Evansville, Indiana, and on *intrastate freight* to and from points in Kentucky to and from Owensboro, were unjust and unreasonable. A petition in regard to interstate rates was subsequently filed with the Interstate Commerce Commission, where it is still pending and undetermined. As to regulating the local rates complained of, the commission then made no finding.

Afterwards, Guenther prepared an amended complaint, which was filed with the commission some time early in September, 1905, in which this company and all the other railroad companies operating lines in the State of Kentucky were made

---

line or lines of road carrying such passenger or freight owned or operated by said railroad, and the Franklin Circuit Court shall have jurisdiction of the offense against the railroad company or corporation offending, and the Circuit Court of the county where such offense may be committed by said officer, agent or employé shall have jurisdiction in all prosecutions against said officer, agent or employé.

Sec. 3. Prosecutions under this act shall be by indictment.

Sec. 4. All prosecutions under this act shall be commenced within two years after the offense shall have been committed.

Sec. 5. In making said investigation, said commission may, when deemed necessary, take the depositions of witnesses before an examiner or notary public, whose fee shall be paid by the State, and upon the certificate of the chairman of the commission, approved by the governor, the auditor shall draw his warrant upon the treasury for its payment.

Approved March 10, 1900, Acts p. 5, ch. 2.

defendants, and wherein it was alleged, in substance (and again without any details), that all local freights from and to all local points in the State of Kentucky, as fixed and charged by the defendant railroad companies on all classes of freight, were excessive, discriminatory and extortionate, and he prayed the commission to revise and adjust the rates, not only in and out of Owensboro, but to revise and adjust the rates between all local points from and to every local point throughout the State of Kentucky.

Subsequently, on the fourteenth of September, 1905, three lumber companies of Louisville, Kentucky, tendered their petition to be made parties to the Guenther proceedings then pending, and they adopted the general language of his complaint with respect to all local rates in the State, and they added complaints in regard to the rates on logs, lumber and cross ties.

On the third of October, 1905, the State of Kentucky, through certain attorneys, filed a petition to intervene on the part of the State in the Guenther proceedings, and sought to make the State a party complainant against all the railroad companies as defendants operating lines in the State. The petition was opposed by the company on the ground that the State had no standing in the proceedings, and certainly none by the attorneys named, but it was granted, and the State intervened as prayed for, and was made a party complainant so that it might prosecute the proceedings against the company and all the other carriers made defendants therein. The proceedings against the various railroad companies within the State were subsequently consolidated before the commission.

Before answering the complaints of Guenther, the lumber companies and the State of Kentucky against the defendant company and the other railroad companies in that State, the company, in this case, duly objected to the proceedings before the commission on various grounds, among them that the complaint did not state facts sufficient to constitute a cause of action against the company, and on the ground that the complaints were not sufficiently definite and specific, and that the com-

plaints should show specifically what rates are claimed to be exorbitant, excessive or extortionate, or what commodity or which communities the rates of the company discriminate against.

An objection was also duly and in season made that the commission had no power to fix a general maximum rate or rates for all commodities from and to all points within the State, but that specific complaint should be made as to the particular rates complained of. The commission ruled that the entire subject of railroad rates was before it, and decided to proceed with its investigation of such rates on all railroads and between all places and on all classes of commodities within the State of Kentucky.

By virtue of the complaints above adverted to the proceedings against substantially all the railroad companies of the State were then continued, and the commission heard and decided the question of rates relating to this company, and some, but not all, of the other roads in the State.

The commission subsequently, and on July 20, 1906, promulgated its order making schedules for "Maximum Rates on Freight," and it applied one schedule, called "Kentucky Railroad Commission's Standard Tariff, No. 1," to this company and four other companies within the State, although in the case of one of the four (the Chesapeake and Ohio Railroad Company) no notice of such tariff was ever served upon it. Another schedule, called "Kentucky Railroad Commission's Standard Tariff, No. 2," applied to the Illinois Central Railroad Company alone, and the commission left several railroad companies untouched by either of such schedules, or by any schedule, although they were defendants in this proceeding. In its opinion the commission stated as follows: "The several complaints, which for convenience have been consolidated and heard together in this investigation, raise for the first time in Kentucky the question of the reasonableness of all rates for the transportation of all commodities upon all railroads to and from all points within the State."

*Mr. C. C. McChord* and *Mr. R. H. Winn*, with whom *Mr. James Breathitt*, Attorney General of the State of Kentucky, was on the brief, for appellants:

The averment that the statute herein involved did not confer upon the commission the power to fix the rates complained of, took out of the case all basis of a claim of Federal jurisdiction. *Louisville* v. *Cumberland Tel. Co.*, 155 Fed. Rep. 729; *Barney* v. *New York*, 193 U. S. 437; *S. C.*, 132 Fed. Rep. 901; *S. C.*, 138 Fed. Rep. 184; *Raymond* v. *Chicago*, 207 U. S. 20.

The statute sought to be condemned clothes the commission with the power of establishing just and reasonable rates, a function which can be conferred by the legislature, whether empowered by the constitution of the State or not, and which is rather an adjunct to the legislative, than the judicial power.

A judicial hearing is not necessary to the fixing of a rate. *Railroad Co.* v. *Minnesota*, 134 U. S. 418; *Fitts* v. *McGhee*, 172 U. S. 516; *Railroad Co.* v. *Nebraska*, 170 U. S. 57; *State* v. *Railroad*, 33 Kansas, 176; *N. Y. Health Dept.* v. *Trinity Church*, 145 N. Y. 32; *San Diego* v. *Nat'l City*, 174 U. S. 740; *Railroad Co.* v. *Board of Commrs.*, 78 Fed. Rep. 258.

Making a rate is not a judicial function. *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210; *Atl. C. L.* v. *North Carolina*, 206 U. S. 20; *Smyth* v. *Ames*, 169 U. S. 466; *Reagan* v. *Trust Co.*, 154 U. S. 362; *Lake Shore* v. *Smith*, 173 U. S. 684; *Railroad Co.* v. *Gill*, 156 U. S. 664; *Railroad Co.* v. *Wellman*, 143 U. S. 339; *Railroad Co.* v. *Blake*, 94 U. S. 180; *Munn* v. *Illinois*, 94 U. S. 113; *Stone* v. *Trust Co.*, 116 U. S. 307; *Storrs* v. *Railroad*, 29 Florida, 617; *Ga. Railroad Co.* v. *Smith*, 128 U. S. 174; *Dow* v. *Beidelman*, 125 U. S. 680; *Budd* v. *New York*, 143 U. S. 517; *Cov. Turnpike Co.* v. *Sanford*, 164 U. S. 578.

The Kentucky act of March 10, 1900, does not confer judicial power on the commission, and the making of a rate is not the enforcement of a judgment or the infliction of a penalty. *McChord* v. *L & N.*, 183 U. S. 483; *L. & N, R. R. Co.* v. *Commonwealth*, 183 U. S. 505; *West. Un. Tel. Co.* v. *Myatt*, 98 Fed. Rep. 341, 345; *State* v. *Johnson*, 60 Pac. Rep. 1068; *Railroad*

*Co.* v. *Inters. Com. Com.*, 162 U. S. 184; *Inters. Com. Com.* v. *Railroad Co.*, 167 U. S. 507; *Inters. Com. Com.* v. *Railroad Co.*, 168 U. S. 144; *State* v. *Wilson*, 28 S. E. Rep. 554.

The act is not unconstitutional because it does not expressly provide for a judicial investigation or a hearing as to the reasonableness of the rate after it is fixed. *Prentis* v. *Atl. C. L.*, 211 U. S. 210; *Fitts* v. *McGhee*, 172 U. S. 516; *Railroad Co.* v. *Minnesota*, 134 U. S. 418; *Railroad Co.* v. *Trammel*, 53 Fed. Rep. 197.

The act of March 10, 1900, does not violate the state constitution. *L. & N.* v. *Commonwealth*, 46 S. W. Rep. 707; *Pennington* v. *Woolfolk*, 79 Kentucky, 13; *Stone, Auditor*, v. *Wilson*, 19 Ky. Law Rep. 126; *Morton* v. *Woolford*, 99 Kentucky, 367.

A state statute relating to commerce is presumed to relate only to domestic commerce in absence of an expressed relation to interstate or foreign commerce. *L. & N.* v. *Kentucky*, 183 U. S. 505; *Munn* v. *Illinois*, 94 Illinois, 113; *Stone* v. *Trust Co.*, 116 U. S. 307; *Wabash R. R.* v. *Illinois*, 118 U. S. 557; *Railroad Co.* v. *Jones*, 149 Illinois, 384; Endlich on Interp. of Stat., § 169.

This is but an exemplification of the general rule which presumes statutes to be constitutional. *Smyth* v. *Ames*, 169 U. S. 466; *Reagan* v. *Trust Co.*, 154 U. S. 362; *Railroad Co.* v. *Smith*, 173 U. S. 684; *Railroad Co.* v. *Wellman*, 143 U. S. 339; *Southern Pac.* v. *R. R. Com.*, 78 Fed. Rep. 236; *Railroad Co.* v. *Tompkins*, 176 U. S. 173.

The bills of complaint do not claim that there is no state commerce. That there is such is settled beyond question. *Railroad* v. *Lander*, 20 Ky. Law Rep. 913; *Railroad Co.* v. *Mississippi*, 133 U. S. 587; *Railroad Co.* *Pennsylvania*, 145 U. S. 192; Tiedeman on State and Fed. Control, 1056; *Plassey* v. *Ferguson*, 163 U. S. 537; *Stone* v. *Trust Co.*, 116 U. S. 307; *C. & O. R. R.* v. *Kentucky*, 179 U. S. 388.

That state and interstate commerce may be intermingled, and have a close relation one to the other, does not prevent the State from controlling that which is state or domestic com-

merce. *Smyth* v. *Ames,* 169 U. S. 466; *Railroad Co.* v. *Tompkins,* 176 U. S. 167; *Reagan* v. *Trust Co.,* 154 U. S. 362.

There are no excessive or cumulative penalties for second, third and succeeding convictions under the act of March 10, 1908. 12 Cycl. Law & Pro. 949; *Brown* v. *Kentucky,* 100 Kentucky, 127; *S. C.,* 37 S. W. Rep. 496; *Wilson* v. *Kentucky,* 26 Ky. Law Rep. 685; *Standard Oil Cases,* 87 S. W. Rep. 1092, 1131; *S. C.,* 29 Ky. Law Rep. 20; *Cawein* v. *Kentucky,* 22 Ky. Law Rep. 1736; *Parish* v. *N. C. & St. L. Ry.,* 49 Am. Rep. 655; *S. C.,* 13 Am. & Eng. Ency. of Law (2d ed.), 65; *Ex Parte Snow,* 120 U. S. 274.

The essential elements of "due process" are reasonable notice and a fair opportunity to be heard. *Davison* v. *New Orleans,* 96 U. S. 102; *Murray's Lessee* v. *Hoboken Land Co.,* 18 How. 272; *Dent* v. *West Virginia,* 129 U. S. 114; *Iowa Cent. R. R.* v. *Iowa,* 204 U. S. 255; *Wilson* v. *North Carolina,* 169 U. S. 586; *Hurtado* v. *California,* 110 U. S. 535; *Paulson* v. *Portland,* 149 U. S. 41; *Hibben* v. *Smith,* 191 U. S. 393; *L. & N.* v. *Schmidt,* 177 U. S. 236.

The State may distinguish, select and classify objects of legislation without denying equal protection of the laws. *Missouri Ry. Co.* v. *Mackey,* 127 U. S. 209; *Barbier* v. *Connolly,* 113 U. S. 32; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Ky. Ry. Tax Cases,* 115 U. S. 322; *Home Ins. Co.* v. *New York,* 134 U. S. 606; *Pac. Exp. Co.* v. *Seibert,* 142 U. S. 339; *Orient &c.* v. *Daggs,* 172 U. S. 562; *New York &c.* v. *Bristol,* 151 U. S. 571.

That a different rate may be made for different roads constitutes neither arbitrary power nor unjust discrimination, so long as the rule by which the rates are fixed is uniform. *Reagan* v. *Trust Co.,* 154 U. S. 362; *Railroad Co.* v. *Tompkins,* 176 U. S. 167; *Smyth* v. *Ames,* 169 U. S. 540, 547; *S. C.,* 64 Fed. Rep. 165; *Cov. Turnpike* v. *Sanford,* 164 U. S. 578; *Munn* v. *Illinois,* 94 U. S. 113; *Railroad Co.* v. *Gill,* 156 U. S. 664; *Railroad Co.* v. *Minnesota,* 134 U. S. 418; *Railroad Co.* v. *Iowa,* 94 U. S. 164; *Stone* v. *Trust Co.,* 116 U. S. 307; *Storrs* v. *Railroad Co.,* 29 Florida, 617; *S. C.,* 11 So. Rep. 227; *Ruggles* v. *Illinois,*

108 U. S. 526; *Budd* v. *New York*, 143 U. S. 517; *Common-
wealth* v. *Cov. Bridge*, 14 Ky. Law Rep. 836.

Classification proceeding on any difference which has a rea-
sonable relation to the subject-matter sought to be accom-
plished is unobjectionable, though inequality results. Rail-
roads have always formed a separate and distinct class. *Rail-
road Co.* v. *Matthews*, 174 U. S. 96; *Barbier* v. *Connolly*, 113
U. S. 27; *Williams* v. *Mississippi*, 170 U. S. 214; *Grundling* v.
*Chicago*, 177 U. S. 183; *Budd* v. *New York*, 143 U. S. 517; *Dow*
v. *Beidelman*, 125 U. S. 680; *Magoun* v. *Trust Co.*, 170 U. S.
282; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 560; *Railroad Co.* v.
*McKee*, 127 U. S. 205; *Railroad Co.* v. *Beckwith*, 129 U. S. 26;
*Bowman* v. *Lewis*, 101 U. S. 22; *Hayes* v. *Missouri*, 120 U. S. 68;
*Soon Hing* v. *Crowley*, 113 U. S. 703.

The police power of the State relating to the regulation of
the rates of common carriers cannot be bargained away. *L. &
N. R. R.* v. *Kentucky*, 183 U. S. 505; *Stone* v. *Mississippi*, 101
U. S. 814; *Douglas* v. *Commonwealth*, 168 U. S. 488; *Fertiliz-
ing Co.* v. *Hyde Park*, 97 U. S. 659; *L. & N. R. R.* v. *Ken-
tucky*, 161 U. S. 677; *Boston Beer Co.* v. *Massachusetts*, 97 U. S.
25; *N. O. Gas Light Co.* v. *Louisiana Light Co.*, 115 U. S. 650;
*Mugler* v. *Kansas*, 123 U. S. 623; *Slaughter House Cases*, 111
U. S. 746; *Ruggles* v. *Illinois*, 108 U. S. 536; *New Jersey* v.
*Yard*, 95 U. S. 104; *Stone* v. *Trust Co.*, 116 U. S. 307; *Railroad
Co.* v. *Illinois*, 146 U. S. 387; *Railroad Co.* v. *Nebraska*, 170
U. S. 57; *Railroad Co.* v. *Bristol*, 151 U. S. 556; *Railroad Co.* v.
*Defiance*, 167 U. S. 88; *Pearsall* v. *Railroad Co.*, 161 U. S. 648;
*Railroad Co.* v. *Transp. Co.*, 25 W. Va. 324.

For a charter provision to amount to an irrevocable contract
fixing rates for all time, it must be clear, to the exclusion of a
reasonable doubt, and must contain words exempting the cor-
poration from future control. Merely to fix a maximum rate
in the charter is not sufficient. Tiedeman on State and Federal
Control, 952, 955; Russell on Police Powers, 127, 128; *Cent.
Transp. Co.* v. *Pullman*, 139 U. S. 49; *Minott* v. *Railroad Co.*,
18 Wall. 204; *Bailey* v. *Maguire*, 22 Wall. 215; *Stone* v. *Wis-*

*consin,* 94 U. S. 181; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Ruggles* v. *Illinois,* 108 U. S. 536; *S. C.,* 91 Illinois, 262; *Railroad Co.* v. *Illinois,* 108 U. S. 541; *Stone* v. *Trust Co.,* 116 U. S. 307, 347; *Banking Co.* v. *Smith,* 128 U. S. 174; *Railroad Co.* v. *Minnesota,* 134 U. S. 418, 467; *Smyth* v. *Ames,* 169 U. S. 466; *Turnpike* v. *Sanford,* 164 U. S. 578; *Commonweath* v. *Covington Bridge,* 21 S. W. Rep. 1042; *Railroad Co.* v. *Miller,* 132 U. S. 75; *Winchester Turnpike Co.* v. *Croxton,* 98 Kentucky, 739; *Ragan* v. *Aiken,* 9 Lea (Tenn.), 610; *Water Co.* v. *Fergus,* 178 Illinois, 571; *Danville* v. *Water Co.,* 178 Illinois, 399; *S. C.,* 53 N. E. Rep. 118; *S. C.,* 180 Illinois, 235; *S. C.,* 54 N. E. Rep. 224; *Water Co.* v. *Freeport,* 57 N. E. Rep. 862.

A reservation of the right to alter, amend or repeal, expressed either in a general law or in the charter prevents a provision from becoming an irrevocable contract. Tiedeman on State and Federal Control, 980; *Citizens' Savings Bank* v. *Owensboro,* 173 U. S. 636.

*Mr. Henry Lane Stone,* for Louisville & Nashville Railroad Company:

The ruling of the court below sustaining its jurisdiction was correct. The allegations of the amended bill bring the case within the decision of this court in *Raymond* v. *Chicago Traction Co.,* 207 U. S. 20.

The principle is well settled that where a Circuit Court of the United States once obtains jurisdiction of a cause, it may proceed to determine all questions involved therein, whether state or Federal. *Osborne* v. *Bank of United States,* 9 Wheat. 822, 823; *Elliott* v. *Peirsol,* 1 Pet. 340; *Mayor* v. *Cooper,* 6 Wall. 252; *Tennessee* v. *Davis,* 100 U. S. 264; *Railroad Co.* v. *Mississippi,* 102 U. S. 135, 141; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 154; *Omaha Horse Ry. Co.* v. *Cable Tram-Way Co.,* 32 Fed. Rep. 727, 729; *People's Savings Bank* v. *Layman,* 134 Fed. Rep. 635, 641; *Michigan R. R. Tax Cases,* 138 Fed. Rep. 223, 230.

The decree appealed from, therefore, should be affirmed, and

it may be upheld and sustained upon any of the grounds relied on by appellee whether or not they arise under the Constitution and laws of the United States.

As the McChord Act undertakes to vest in the railroad commission, an administrative body, legislative, executive and judicial powers, it violates §§ 27, 28, 109 and 135 of the Kentucky constitution and is, therefore, unconstitutional. *Louisville & Nashville Railroad Co. v. McChord*, 103 Fed. Rep. 222; *Roberts v. Hackney*, 109 Kentucky, 265; *Pratt v. Breckinridge*, 114 Kentucky, 1; *McChord v. Louisville & Nashville R. R. Co.*, 183 U. S. 495; *Interstate Commerce Commission v. Cin., N. O. & Texas Pacific Ry. Co.*, 167 U. S. 499.

Neither the said statute nor any other Kentucky statute provides for any judicial investigation or review on the reasonableness of any rate fixed by the commission for services of a carrier thereafter to be rendered, before the carrier is required to put them into force and effect. The making of such order conclusive as to the sufficiency of the rate fixed, deprives the carrier of its property without due process of law, and denies it the equal protection of the law, in violation of the Fourteenth Amendment. *Chicago, Milwaukee & St. Paul Ry. Co. v. Minnesota*, 134 U. S. 458; *Reagan v. Farmers' Loan & Trust Co.* 154 U. S. 399; *Louisville & Nashville R. R. Co. v. McChord*, 103 Fed. Rep. 224; *Chicago, M. & St. P. R. Co. v. Tompkins*, 176 U. S. 172; *Smyth v. Ames*, 169 U. S. 518; *Detroit v. Detroit Citizens' Street Ry. Co.*, 184 U. S. 381; *Hagar v. Reclamation District*, 111 U. S. 708; *Davidson v. New Orleans*, 96 U. S. 107; *Hovey v. Elliott*, 167 U. S. 418; *Violett v. Alexandria*, 92 Virginia, 561, 569; *Ex parte Young*, 209 U. S. 123; *Louisville & Nashville R. R. Co. v. Central Stock Yards Co.*, 212 U. S. 132; *Roller v. Holly*, 176 U. S. 409.

The McChord Act does not in its title or provisions authorize the commission to prescribe and establish schedules of maximum rates or tariffs, as is attempted by the order of July 20, 1906. The principal object of the act was to amend § 816, Kentucky statutes, which had been held by the Court of Appeals

to be unconstitutional and void, *L. & N. R. R. Co.* v. *McChord,* 99 Kentucky, 132, and there is no suggestion looking to the granting of power to the commission to make schedules of maximum rates. It is impossible to conceive that the legislature would require a road like the Louisville & Nashville with 1,300 miles of road and 700 stations to publish and put into force a rate schedule in ten days. The legislature is presumed to have had before it the acts of other States creating railroad commissions and defining their powers, and apt and clear language would have been employed, if it had been the intention to clothe the commission with this important and far-reaching power. No railroad commission of any State has ever assumed such power except where expressly granted.

Powers of railroad commissions are limited, and the statutes granting such powers must be strictly construed. *Chicago, I. & L. Ry. Co.* v. *R. R. Commissioners of Indiana,* 38 Ind. App. 439; *State* v. *Chicago, M. & St. P. Ry. Co.,* 16 S. D. 517; *S. C.,* 94 N. W. Rep. 407; *Board of R. R. Commrs.* v. *Oregon Ry. & Nav. Co.,* 17 Oregon, 65; *S. C.,* 19 Pac. Rep. 702; *Interstate Com. Comm.* v. *C., N. O. & T. P. Ry. Co.,* 167 U. S. 479; *Chicago, B. & Q. Ry. Co.* v. *Dey,* 38 Fed. Rep. 656; *Louisville & Nashville R. R. Co.* v. *McChord,* 103 Fed. Rep. 216.

The complaints on which the rate order was made were insufficient to give jurisdiction to or authorize said commission to make such order or to prescribe and establish maximum rates even if the act empowered the commission to establish and prescribe maximum rates on complaints of any character or under any circumstances.

The commission acted beyond its power in attempting to prohibit the railroad company from increasing or advancing any rate or rates it had or has in force and effect on any commodity or commodities belonging to either of the classes set out in the commodity clause in "Standard Tariff No. 1," notwithstanding the fact that such rates had not been found by said commission to be extortionate.

The said order shows on its face that the maximum rates

therein prescribed were made applicable to some roads and not for the same distances and on the same classes of freight to all the other railroad companies operating lines in Kentucky, thereby depriving this appellee of equal protection of the laws. *Louisville & Nashville R. R. Co.* v. *McChord*, 103 Fed. Rep. 216; *Dow* v. *Beidelman*, 125 U. S. 680; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Interstate Commerce Comm.* v. *Chicago Great Western Ry. Co.*, 209 U. S. 108; *L. & N. R. R. Co.* v. *R. R. Comm. of Tennessee*, 19 Fed. Rep. 679; *Terre Haute & Indianapolis R. R. Co.* v. *State*, 159 Indiana, 438.

*Mr. Edmund F. Trabue*, with whom *Mr. John C. Doolan*, *Mr. Attilla Cox, Junior*, and *Mr. J. M. Dickinson* were on the brief, for Illinois Central Railroad Company.

*Mr. John Galvin*, with whom *Mr. Edward Colston* and *Mr. Maurice L. Galvin* were on the brief, for the Cincinnati, New Orleans and Texas Pacific Railway Company.

*Mr. Alexander Pope Humphrey*, filed a brief in behalf of the Southern Railway Company in Kentucky.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The appellants deny the jurisdiction of the Circuit Court in this case. There is no diverse citizenship in the case of this particular company, and the jurisdiction must depend upon the presence of a Federal question. The bill filed by the company herein attacked the validity of the act of the legislature of Kentucky of March 10, 1900 (above set forth in full), on several grounds, as in violation of § 1 of the Fourteenth Amendment. It was also averred that the act was a violation of § 4, Art. IV, of the Federal Constitution, in that it constituted an abandonment by the State of Kentucky of a repub-

lican form of government, in so far as it vested legislative, executive and judicial powers of an absolute and arbitrary nature over railroad carriers in one body or tribunal, styled the railroad commission. The company also contended that the act was in violation of the Federal Constitution, on account of the enormous fines and penalties provided in the act as a punishment for a violation of any of its provisions; also that the enforcement of the act would operate to deprive the company of its property without due process. of law, and would deny to it the equal protection of the laws, in violation of § 1 of Art. XIV, of the Amendments to the Constitution of the United States. Other grounds of alleged invalidity of the act in question, as in violation of the Federal Constitution, are set up in the bill. The bill also contained the averment that the order of the railroad commission of Kentucky, in making a general schedule of maximum rates for the railroads mentioned in its order, was invalid, as unauthorized by the statute. This is, of course, a local or state question.

The Federal questions, as to the invalidity of the state statute because, as alleged, it was in violation of the Federal Constitution, gave the Circuit Court jurisdiction, and, having properly obtained it, that court had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only.

This court has the same right, and can, if it deem it proper, decide the local questions only, and omit to decide the Federal questions, or decide them adversely to the party claiming their benefit. *Horner* v. *United States (No. 2),* 143 U. S. 570, 576; *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112, 154; *Penn Mutual Life Insurance Co.* v. *Austin,* 168 U. S. 685, 694; *Burton* v. *United States,* 196 U. S. 283, 295; *Williamson* v. *United States,* 207 U. S. 425; *People's Savings Bank* v. *Layman,* 134 Fed. Rep. 635; *Michigan Railroad Tax Cases,* 138 Fed. Rep. 223. Of course, the Federal question must not be merely colorable or

fraudulently set up for the mere purpose of endeavoring to give the court jurisdiction. *Penn Mutual Life Insurance Co.* v. *Austin*, 168 U. S. 685, 695; *Michigan Railroad Tax Cases*, 138 Fed. Rep. 223, *supra*.

The character of some of the Federal questions raised is such as to show that they are not merely colorable, and have not been fraudulently raised for the purpose of attempting to give jurisdiction to a Federal court.

The appellants, however, contend that the jurisdiction of the Circuit Court did not attach under the Fourteenth Amendment, because of the allegations contained in the bill of the company, in which was contained an averment that the defendants below (the appellants here) had not been vested with the power, by either the constitution of the State of Kentucky or by any act of its legislature, or by any law, to make and enter the order of July 20, 1906, complained of in the company's bill. The argument of the appellants is that in order to violate the Fourteenth Amendment the action complained of must be under the authority of the State, and where the allegation of the bill was that "no power or authority had been vested in or conferred upon the appellants by the act of March 10, 1900, or by any law, to make or fix the rates complained of," such allegations swept away the foundation for the claim of Federal jurisdiction, inasmuch as in such case the action of the railroad commission was not the action of the State, and the principle decided in *Barney* v. *City of New York*, 193 U. S. 430, 437, was applicable.

If the averment as to the invalidity of the order of the commission were the only ground upon which a Federal question was founded, and if the bill alleged that the order was invalid because it was not authorized by the State, either by statute or in any other way, the objection might be good, but the bill sets up several Federal questions. Some of them are directed to the invalidity of the statute itself, on the ground that it violates various named provisions of the Federal Constitution in addition to and other than the Fourteenth Amendment, while some of the other Federal questions are founded upon the

terms of the order made by the commission, under what is claimed by the commission to be the authority of the statute. The bill also sets up several local questions arising from the terms of the order, and which the company claims are unauthorized by the statute. The various questions are entirely separate from each other. Under these circumstances there can be no doubt that the Circuit Court obtained jurisdiction over the case by virtue of the Federal questions set up in the bill, without reference to the particular violation set up in regard to the Fourteenth Amendment.

Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons. In this case we think it much better to decide it with regard to the question of a local nature, involving the construction of the state statute and the authority therein given to the commission to make the order in question, rather than to unnecessarily decide the various constitutional questions appearing in the record.

The commission has assumed the power under this statute of making what are termed general maximum rates for the transportation of all commodities upon all railroads to and from all points within the State, and this company is included in the general order made by the commission. This is an enormous power. Jurisdiction so extensive and comprehensive as must exist in a commission in the making of rates by one general tariff upon all classes of commodities upon all the railroads throughout the State is not to be implied. The proper establishment of reasonable rates upon all commodities carried by railroads, and relating to each and all of them within the State depends upon so many facts which may be very different in regard to each road, that it is plain the work ought not to be attempted without a profound and painstaking investigation, which could not be intelligently or with discrimination accomplished by wholesale. It may be matter of surprise to find such power granted to any commission, although it would seem

that it has in some cases been attempted. *Interstate Commerce Commission* v. *Railway Co.*, 167 U. S. 479, 495. In any event, the jurisdiction of the commission to establish all rates at one time and in regard to all commodities on all railroads in the State, on a general and comprehensive complaint to the commission that all rates are too high, or upon like information of the commission itself, must be conferred in plain language. The commission, as an extraordinary tribunal of the State, must have the power herein exercised conferred by a statute in language free from doubt. The power is not to be taken by implication; it must be given by language which admits of no other reasonable construction.

In this case we are without the benefit of a construction of the statute by the highest state court of Kentucky, and we must proceed in the absence of state adjudication upon the subject. Nevertheless, we are compelled to the belief that the statute does not grant to the commission any such great and extensive power as it has assumed to exercise in making the order in question.

The first section of the statute provides for a complaint being made to the commission accusing the railroad company of charging or receiving extortionate freight or passenger rates over its lines of railroad in that State; or if the commission receive information or have reason to believe that such rate or rates are being charged, it is its duty in either case to hear and determine the matter as speedily as possible. The commission is to give the company complained of not less than ten days' notice, and the notice must contain a statement of the nature of the complaint or matter to be investigated, and if the commission, after investigation of the complaint or on its own information, determines that the company has been guilty of extortion the commission is in that case authorized to make and fix "a just and reasonable rate, toll or compensation which said railroad company or corporation shall charge, collect or receive for like service thereafter rendered." The whole section, it seems to us, proceeds upon the assumption that complaint

shall be made of some particular rate or rates being charged, or, if without formal complaint, the commission receives information or has reason to believe that such rate or rates are being charged, then the investigation is to go on in relation to those particular rates. We cannot for one moment believe that under such language as is contained in the section the commission is clothed with jurisdiction, either upon complaint or upon its own information, to enter upon a general investigation of every rate upon every class of commodities carried by all the roads of the State from or to all points therein, and make a general tariff of rates throughout the State, such as has been made in this case. No such power was given to the Interstate Commerce Commission. *Interstate Commerce Commission* v. *Cincinnati &c. Railway Co.*, 167 U. S. 479, *supra.* As the express power was not given in so many words to the commission, this court held that it could not be implied.

The so-called complaints in this case, above mentioned, are, as we construe the statute, entirely too general to raise any objection to a specific rate. Guenther, in his petition, in substance, alleged "that all local freight rates to and from all local points in the State of Kentucky, as fixed and charged by all railroads on all classes of freight, are excessive, discriminatory and extortionate." The lumber companies, which were permitted to intervene, made, substantially, the same complaint (with an addition as to lumber, ties and logs), and the attorneys appearing in behalf of the State of Kentucky joined in the general complaint of Guenther. If complaint were necessary to enable the commission to make rates, the allegations in the complaint of Guenther were mere sweeping generalities, and were in no sense whatever a fair or honest compliance with the statute. The commission itself, in order to act, must have had some information or had some reasons to believe that certain rates were extortionate, and it could not, under this statute, enter upon a general attack upon all the rates of all the companies throughout the State and make an order such as this in question. Such action is, in our judgment, founded upon a total

misconstruction of the statute and an assumption on the part of the commission of a right and power to do that which the statute itself gives it no authority whatever to do.

And again, the section provides that if the commission should determine that the company had been guilty of extortion, it must, instead of the extortionate rate, make and fix a reasonable and just rate which the company may charge for its service thereafter rendered. This language is not apt by which to confer power to establish a schedule of rates applicable in all cases to all commodities and on all roads, and on the contrary it strengthens the view that no such general jurisdiction to establish rates in all cases for all roads throughout the State by a general tariff was in the contemplation of the framers of the statute.

It may also be stated that if the statute was really intended to give the commission power to make a general schedule of rates, we should expect to find, almost necessarily, a right to increase as well as to reduce those rates in some instances, in order to produce an equality, where, otherwise, great inequalities might exist as a result of the putting the general schedule of reductions in force. Here is a case where the schedule of rates was reduced from twenty to twenty-five per cent upon an average. Some of the rates not touched might require increase in order to make the whole schedule fair and reasonable, and yet the commission could not make the increase over the amount theretofore collected by the company. This seems to us to be a very strong argument in favor of the view that the legislature never intended to and did not in fact give such a power to establish general maximum rates, but confined it to one or two or a few specified rates, which might be reduced upon complaint, and where there might be a real investigation of all the problems involved in the propriety of the reduction in a few distinct and separate cases. A sufficient investigation of the whole series of rates on all the roads in the State by one commission is almost an impossibility, and an attempt to do so would prove a failure, and would, in all probability, result in gross injustice

to the roads. The statute, it will be remembered, gives no power to the commission to fix rates, unless it has already determined that the rates complained of, or which it has investigated upon its own information, are extortionate after hearing the parties, and then it fixes the rates at a just and reasonable amount. If no extortion is found in any particular rate there can be no fixing of rates in that particular. And yet that particular rate might require increase in order to make the whole schedule just, fair and reasonable. A general power to fix rates under such limitations cannot be supposed to have been within the intent of the legislature. The difference between the fixing of one rate, or a few upon specific complaint or information, and the adoption of a general scheme of rates applicable in all cases to all the roads, is vast and important. In the one case it can be fairly accomplished, while in the other the chances of injustice and great inequalities are infinite and almost certain to occur.

We do not say that under this statute, as we construe it, there must be a separate proceeding or complaint for each separate rate. A complaint, or a proceeding on information by the commission itself, in regard to any road, may include more than the rate on one commodity or more than one rate, but there must be some specific complaint or information in regard to each rate to be investigated, and there can be, under this statute, no such wholesale complaint, which by its looseness and its generalities can be made applicable to every rate in operation on a railroad, or upon several or all of the railroads of the State. If the legislature intended to give such an universal and all-prevailing power it is not too much to say that the language used in giving it should be so plain as not to permit of doubt as to the legislative intent.

The appellants contend that in any event the order made by the commission December 7, 1905, regarding rates on lumber, logs and cross ties, to and from all points in the State, ought to stand as reasonable and proper. The complaint made by the lumber dealers in their petition to intervene in the Guenther

proceeding adopted the language of that petition as to all rates upon all commodities upon all roads throughout the State, and then added a specific complaint as to the logs, &c. While the whole proceeding as to all rates was pending before the commission it took up as part of it, the question of the reasonableness of all the rates on lumber to and from all points in the State. This proceeding is, therefore, but a part of the whole proceeding involving an investigation as to every rate on all commodities on every road throughout the State, and we do not think it a case where a particular rate on a specific commodity, applicable all through the State upon all roads, should be separated from the general order, when the specific order was made after the general complaint was filed and is itself a general order, and was made by the commission in the exercise of an assumed power claimed to be given by the statute, which claim we hold was totally unfounded. We therefore think that in this particular case the order as to lumber rates must fall with the rest of the assumed jurisdiction of the commission.

There is nothing in our decision in *McChord* v. *L. & N. R. R.*, 183 U. S. 483, which affects the question discussed in this opinion.

We are of opinion that under the statute the commission had no authority to make a general tariff of rates, and the final decree of the Circuit Court is for that reason

*Affirmed.*