## GROCERS BAKING CO. v. SIGLER.

### No. 34.

District Court, W. D. Kentucky, Owensboro.

Aug. 2, 1941.

A. C. Van Winkle, of Louisville, Ky., and Cary, Miller & Kirk, of Owensboro, Ky., for plaintiff.

Thomas E. Sandidge, of Owensboro, Ky., and DeWitt Chappell, of Evansville, Ind., for defendant.

SWINFORD, District Judge.

The plaintiff seeks to enjoin the infringement of its trade-mark and to restrain unfair competition in the use of such trade-mark.

The plaintiff, Grocers Baking Company, is one of the largest baking companies in the State of Kentucky. Its principal office and place of business is at Louisville, Kentucky. It has other bakeries and distributing points at Lexington, Owensboro and Bowling Green. It began business in 1904 and has been continuously in business since that time. Its business has steadily grown and expanded since its origin and its products are well known in certain parts of the State where its advertising and efforts to establish them have been concentrated. Between 1922 and 1936 the company was selling bread by truck and parcel post at various points between Owensboro, Bowl-

ing Green, Hopkinsville and Glasgow, Kentucky. With the establishment of new trade areas various types of advertising were effected and the products were called to the attention of the public by most of the approved advertising devices such as posters, billboards, stickers and placards in stores and in store windows. There was also some radio advertising.

In the spring of 1937 a route was opened up out of Madisonville running to Providence, Sullivan, Sturgis, Morganfield, Poole, Sebree, Slaughters and back to Madisonville. Bread was sold and advertising done in each of these towns. This route ran along the southern boundary of Henderson County and extended out to Morganfield, which is situated in Union County, a county west of Henderson County. All the plaintiff's products are sold under the trade name "Honey-Krust", and this name upon a particular design is filed with and registered in the United States Patent Office, and the plaintiff is the owner and holder of a certificate of registration to that effect.

The defendant operates a "bread route" in Henderson County, Kentucky. His business enterprise consists of the ownership of one truck and the delivery or sale of bread by the defendant personally. He is independent of any baking company and conducts a strictly one man business. A "little business" man in the true sense of the word.

Each morning he goes to Evansville, Indiana, purchases his bread, comes back to Henderson County, Kentucky, and sells it to various housekeepers. The product that he sells is a loaf of bread, wrapped in oil paper, and in addition to other unique designing bears the name "Hon-E-Krust". This bread is the product of the Hi-Class Baking Company, a corporation of Evansville, Indiana.

The design and spelling of this product was originated in 1937 and was placed on the market at that time in Henderson County, Kentucky, and in other territories. The originator of the design and spelling was called as a witness for the defendant and testified that at the time he had never heard of Honey-Krust bread products.

There is some testimony to the effect that the plaintiff had shipped bread into Henderson County and the City of Henderson as early as the middle 1920s, but the testimony on this point is so vague and unsubstantial that it is of no value. It is not shown that at the time Hon-E-Krust first made its appearance in Henderson and Henderson County that any of the plaintiff's products were being sold in that immediate territory.

From the record in this case it would appear that plaintiff was contending that it was the owner and held a certificate for the name Honey-Krust and that the case would necessarily turn upon whether or not this name had been appropriated by the defendant.

This is not the case. The plaintiff has no claim upon the name Honey-Krust. That name, variously spelled, has been in use for many years and is now being used by bakers in various parts of the country. The Southern Baking Company of Bluefield, West Virginia, has in the past had on sale a product "Honey-Krust". The Neterer Bakery, of Huntington, Indiana, puts a bread on the market labeled "Hon-E-Krust". The Goshen Baking Company at Goshen, Indiana, sells a product in the bread line under the trade name "Honey Crust". This latter product is strikingly similar in its lettering and color to the product of the plaintiff here.

In order to determine whether or not the plaintiff's trade-mark has been infringed, we must see just what that trade-mark is and compare it with the offending trade-mark.

The record discloses that the plaintiff in its application expressly disclaims any right to the name "Honey-Krust", but relies entirely upon its design which incidentally contains this word.

In its application filed September 16, 1922, it made this statement: " * * * no claim being made to exclusive use of 'Honey Krust', * * * " etc.

In its statement accompanying its application of March 27, 1929, it used the following language: "The trade-mark is applied or affixed to the goods or to the packages containing the same by means of a label or wrapper bearing the mark or by printing or impressing the same thereon and in divers ways. The drawing is lined to indicate orange, blue, and yellow. No claim is made to the words "Honey-Krust" apart from the mark as shown, although applicant waives no common-law rights to same."

Again in its application of June 26, 1935, the statement to the patent office said:

"The trade-mark is applied or affixed to the goods or to the packages containing the same by means of a label or wrapper bearing the mark or by printing or impressing the same thereon and in divers other ways. The drawing is lined to represent colors orange and blue.

"No claim is made to the words 'Honey-Krust' apart from the mark as shown, nor to the representation of the label or wrapper, although applicant waives no common law rights to same."

It will be seen that not only does the plaintiff make no claim to the name but expressly disclaims any right to it apart from the design.

Here the designs are so entirely dissimilar that it is difficult to see how the most casual observer could be deceived.

The plaintiff's design is a potato shaped figure, a red or very bright orange field on which is written in white blue-bordered letters, very large, and with one word above the other, the words "Honey Krust", all of which are on a background of white. There are also smaller potato shaped designs similar to the one above described and others, also small with a blue field on which is printed Grocers Baking Co., Incorporated. In addition, the wrapper has printed in large letters in blue the word "Sliced" and in smaller letters of the same color, "Taste The Milk And Honey".

The design of the offending trade-mark is larger potato shaped figure with dark brown and dark yellow coloring with the "Sliced" word "Hon-E-Krust" printed inside of the "Bread" figure. There is quite a lot of lettering in dark brown in which is included in rather large letters: "Hi-Class Baking Co., Inc. "Evansville, Indiana"

All of this is on a white background which is covered with all kinds of circus animals and figures, in dark yellow and dark brown. The figures are elephants, lions, tigers, ponies, seals, clowns and the like. It was in proof that customers often referred to the bread as "animal bread".

A view of the respective wrappers, exhibits in the case, reveal to my mind no similarity whatever.

■ The whole object and purpose of a trade-mark is to identify certain goods as being the product of a certain individual, firm or corporation. George B. Graff Co. v. H. C. Cook Co., 55 App.D.C. 136, 2 F. 2d 938, and cases cited.

■ The holder of a certificate of registration of a trade-mark may protect his trade-mark and enjoin infringement of that trade-mark. It is recognized that he has a right to rely upon that registration and to extend and broaden the significance of the trade-mark of an unlimited degree. The Grocers Baking Company holding this certificate could push the trade-mark containing the name "Honey-Krust" to any territory either within or without Kentucky and Indiana, but it could not capitalize, to the exclusion of others, on the name alone. Any symbol or device, not theretofore appropriated, which distinguishes a manufacturer's or producer's product from others of the same general nature, may be affixed to that certain product in order to secure the benefits of increased sales to the producer to the exclusion of others. Amoskeag Manufacturing Company v. Trainer, 101 U.S. 51, 25 L.Ed. 993. This right of exclusive use, in addition to the potential benefits to the holder of the certificate of registration, also contemplates a protection of the buying public from being defrauded or cheated. If the distinguishing mark is imitated in such a way that deception results relief is granted. If there is some remote similarity, but so remote that a distinction is readily discernable, relief will be denied. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550.

■ The rule is well expressed in 26 R. C.L. Page 869: "The infringement of a trademark consists in its use or imitation by another on his goods in such manner that the purchasers of such goods are deceived, or liable to be deceived, and induced to believe that they were manufactured or sold by the owner of the trademark."

■ In the case at bar there is no evidence that any person was deceived or even confused by the alleged similarity of the designs in question. No person who called for "Honey-Krust" or "Hon-E-Krust" bread could have been deceived or cheated. The very nature of the product, a loaf of bread, or other bread products, is such that it passes immediately into the hands of the customer. The only similarity is in the sound of the name upon its pronouncement. It is possible that in the sale of certain products this oneness of sound would be

important and permit deception and fraud both upon the producer and the purchaser and user of the article. Such might be the case in motor oils or gasoline or in fungible goods sold in bulk such as sugar, flour, salt and the like. A motorist, for example, calls for a certain motor oil or gasoline and he rarely ever sees the container from which such product is poured into his car or motor vehicle. A housewife may order a certain kind of sugar or flour which taken from bulk bears no symbol or mark of the maker. There the sound of the word is important and courts of equity should grant relief. No such result could follow in the case of a wrapped loaf of bread whose very appearance is definitely and obviously entirely different. I am of the opinion there is no infringement of the plaintiff's trade-mark.

I am equally convinced that the plaintiff's case must fail from a territorial standpoint. The proof fails to establish that Henderson County was in the trade area where the Grocers Baking Company's product with its trade-mark design was known. No witness from that county, containing a city of several thousand, was produced to show that it was known to any extent there. On the contrary the absence of such proof was rather convincing that this product, even though well known to Louisville and that vicinity and to Owensboro and other parts of Kentucky west of Louisville, was never heard of by the general public in Henderson County. The City of Henderson, county seat of Henderson County, is 156 miles from Louisville and 31 miles from Owensboro. While bread advertisements are most obvious to bakers and persons engaged in the business among the manifold products which the average buyer sees and hears advertised they are relatively unimpressive.

It must be borne in mind that this is not a proceeding against the Hi-Class Baking Company but only against a one man sales service to housewives. These housewives didn't ask for any particular kind of bread but merely accepted what the defendant presented for sale. This practice of peddling Hon-E-Krust bread had been going on for two years, from 1937 to 1939, before plaintiff put its bread, with resultant advertising practices, on sale in Henderson County.

■ This priority in time has been at all times held to be significant in the absence of evidence of bad faith. Hanover

Star Milling Company v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Sweet Sixteen Co. v. Sweet "16" Shop, Inc., et al., 8 Cir., 15 F.2d 920.

■ It is true that a second appropriator of a trade-mark in a given territory may be entitled to the protection of its trade-mark where that territory would in the course of normal trade and business expansion be reached by the second appropriator. This question is comprehensively discussed in the case of Sweet Sixteen Co. v. Sweet "16" Shop, Inc., et al., supra. But in such a case, where the Court is convinced that unfair trade practices were adopted by first appropriating the territory, the question of business integrity is involved. This is in reality a charge of fraud and must be established by proof. There is not proof in this record which would justify the application of such a rule. In the face of positive proof that the plaintiff's products had never been heard of, at the time defendant began selling bread in Henderson County and the utter failure to establish any effort to so notify the defendant, this Court cannot assume that such unfair practice was adopted.

Notice was given of the plaintiff's product to the Hi-Class Baking Company in 1937, but the defendant is not chargeable with that knowledge even though it might be assumed to be sufficient to show the intentions of the plaintiff.

Aside from this there is nothing to convince the Court that Henderson County would be reached in the normal course of trade expansion. While the plaintiff is a large distributor of bread it is a relatively small corporation. It had grown steadily for many years but has not produced convincing evidence that it was entitled to claim the whole of Western Kentucky for its field of expansion. It had been in business for thirty-three years without reaching Henderson County except in a most insignificant way back in the middle 20s and so far as the record discloses had then failed to get a foothold there. In so far as Henderson and Henderson County were concerned it had rather demonstrated a trade contraction and an inability to expand in that territory.

■ The following text from 26 R.C. L. page 839, is appropriate: "Into whatever markets the use of a trademark has extended, or its meaning has become known, there the manufacturer or trader whose

trade is pirated by an infringing use will be entitled to protection and redress. This does not mean that the proprietor of a trademark, good in the markets, where it has been employed, can monopolize markets that his trade has never reached. The mark, of itself, cannot travel to markets where there is no article to wear the badge and no trader to offer the article."

 What has been said in relation to the question of infringement applies with equal force to the question of unfair competition. The doctrine of unfair competition is based upon the principle of common business integrity and equity only affords relief when this principle has been violated.

The record discloses no such violation here and the plaintiff is denied relief prayed for in that respect.

By what has been said in this opinion I have undertaken to determine this case on its merits. I am of the opinion that this Court has jurisdiction to try this cause. 15 U.S.C.A. § 97; Armstrong Paint & Varnish Works v. Nu-Enamel Corp. et al., 305 U.S. 315, 59 S.Ct. 191, 195, 83 L.Ed. 195.

My interpretation of the authorities leads me to the conclusion that a substantial question of infringement was presented and although not sustained the Court having acquired jurisdiction to pass on that question must also pass on all questions involved.

The rule stated in the case of Armstrong Paint & Varnish Works v. Nu-Enamel Corp. et al., supra, is as follows: "While the Act of 1920 does not vest any new substantive rights, it does create remedies in the Federal courts for protecting the registrations and authorizes triple damages for infringement. As a consequence of these remedial provisions, when a suit is begun for infringement, bottomed upon registration under the 1920 act, the district courts of the United States have jurisdiction. Unless plainly unsubstantial, the allegation of registration under the act is sufficient to give jurisdiction of the merits. In this case the trial court concluded that the invalidity of the trade-mark divested it of jurisdiction over unfair competition. This was erroneous. Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trademark, persists to deal with all grounds

supporting it, including unfair competition with the marked article."

This construction of the statute is sustained by Siler et al. v. Louisville & N. R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753; Hurn et al. v. Oursler et al., 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; and Lincoln Gas & Electric Light Company v. City of Lincoln et al., 250 U.S. 256, 39 S.Ct. 454, 63 L.Ed. 968.

The complaint should be dismissed.

Findings of fact, conclusions of law and judgment in accordance with this opinion should be submitted.