NORFOLK & W. RY. CO. et al. v. UNITED STATES (INTERSTATE
COMMERCE COMMISSION et al., Interveners).

(Commerce Court. April 9, 1912.)

No. 40.

**1. COMMERCE** (§ 87*)—INTERSTATE COMMERCE COMMISSION—PROCEEDINGS—
PLEADING.

A complaint against a railroad company before the Interstate Com-
merce Commission construed, and *held*, after hearing, to have been suffi-
cient to put in issue the reasonableness of certain local rates charged by
the defendant.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec. Dig.
§ 87.*]

**2. COMMERCE** (§ 92*)—INTERSTATE COMMERCE COMMISSION—ANNULMENT OF
ORDERS—GROUNDS.

That an order made by the Interstate Commerce Commission changing
the rates to be charged by a railroad between certain points may affect
rates on other roads carrying from other points, and possibly make an
adjustment of such rates necessary, affords no ground upon which the
courts may enjoin against the order of the Commission in the case be-
fore it, provided the rates fixed thereby are just and reasonable in them-
selves.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig.
§ 92.*]

**3. COMMERCE** (§ 92*)—INTERSTATE COMMERCE COMMISSION—ANNULMENT OF OR-
DERS—GROUNDS.

If the particular matter in issue before the Interstate Commerce Com-
mission and inquired into was one of fact, and a full hearing was af-
forded, and the conclusion reached is supported by substantial evidence,
it will not be nullified by the courts.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig.
§ 92.*]

**4. CARRIERS** (§ 26*)—INTERSTATE COMMERCE COMMISSION—ORDER REDUCING
RATES—VALIDITY.

It is not ground for enjoining the enforcement of an order of the In-
terstate Commerce Commission reducing local class rates on a railroad
between certain points, if the rates fixed are reasonable in themselves,
that, owing to the low commodity rate on the same class of traffic, which
has been forced by competition on through shipments to one of such
points, it will be necessary to reduce the through car load rate to the
other point below a reasonable compensation, in order that it may not
exceed the sum of the local rates. An unreasonably high rate on the
traffic and between the points to which the order relates cannot be jus-
tified on the ground that it is necessary to sustain some other rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 67–82; Dec.
Dig. § 26.*]

**5. COMMERCE** (§ 92*)—INTERSTATE COMMERCE COMMISSION—ORDER REDUCING
RATES—VALIDITY.

It is not ground for interference by the courts with an order of the
Interstate Commerce Commission reducing certain rates charged by a
railroad company that competing companies, in consequence of their
failure to meet the reduction, are losing traffic.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig.
§ 92.*]

Petition by the Norfolk & Western Railway Company and others
against the United States, in which the Interstate Commerce Commis-

---

*For other cases see same topic & § NUMBER in Dec. & Am Digs. 1907 to date, & Rep'r Indexes

sion and the Corporation Commission of North Carolina intervene. On final hearing. Decree for respondent.

Albert S. Brandeis, Lucian H. Cocke, and R. Walton Moore, for petitioners.

Blackburn Esterline (Winfred T. Denison, on the brief), for the United States.

Charles W. Needham, for Interstate Commerce Commission.

T. W. Bickett, Atty. Gen. of North Carolina, for Corporation Commission of North Carolina.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Associate Judges.

HUNT, Judge. Some time in 1908 the Corporation Commission of North Carolina filed a complaint before the Interstate Commerce Commission against the Norfolk & Western Railway Company, the Louisville & Nashville Railroad Company, and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, alleging that the rates from Chicago, Cincinnati, and St. Louis and other western points in Ohio, Indiana, Kentucky, Illinois, and other states, to Winston-Salem, Durham, and other points in North Carolina, on classes, grain and grain products, and other commodities, were unjust and unreasonable in and of themselves, and unjustly discriminatory and unduly preferential and prejudicial as compared with rates on the same commodities to Roanoke, Lynchburg, Petersburg, and Norfolk, in Virginia, and that the rates to Winston-Salem, Durham, and other places in North Carolina along the lines of the Norfolk & Western should be reduced to the same basis as obtained for the said Virginia cities. The Norfolk & Western Railway Company and the Louisville & Nashville Railroad Company filed a joint and several answer, denying the material allegations of the complaint. On May 27, 1908, the Southern Railway Company and the Seaboard Air Line Railway and its receivers intervened as parties defendant, and were given the benefit of the answer of the Norfolk & Western and the Louisville & Nashville Companies. On June 7, 1910, the Commission, after a hearing, filed its report and made an order to the effect that the Norfolk & Western Railway Company desist from charging local class rates on traffic from Roanoke, Va., to Winston-Salem, N. C., and from Lynchburg, Va., to Durham, N. C., in excess of those named in the following table:

| Per 100 pounds. | | | | | | | | | | | Per barrel. | Per 100 pounds. | Per ton (2,000 pounds). | | Per carload. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class. | | | | | | | | | | | Class. | Class. | Class. | | Class. | | |
| 1 | 2 | 3 | 4 | 5 | 6 | A | B | C | D | E | F | H | K | L | M | N | O | P |
| Cts. 52 | Cts. 42 | Cts. 34 | Cts. 25 | Cts. 21 | Cts. 17 | Cts. 15 | Cts. 18 | Cts. 15 | Cts. 13 | Cts. 21 | Cts. 30 | Cts. 25 | Cts. 10½ | $1.60 | $1.85 | $31.00 | $21.00 | $17.00 |

The local class rates in effect when the order of the Commission was made were as follows:

| | Class. | | | | | | | | | | | | |
| | 1 | 2 | 3 | 4 | 5 | 6 | A | B | C | D. | E | F | H | K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. | Cts. |
| Durham | 61 | 51 | 42 | 32 | 28 | 21 | 17 | 22 | 21 | 18 | 28 | 42 | 32 | 14 |
| Winston-Salem | 61 | 51 | 42 | 32 | 28 | 21 | 17 | 22 | 21 | 18 | 28 | 42 | 32 | 14 |

| | Class | | | | |
| | L | M | N | O | P |
|---|---|---|---|---|---|
| Durham | $1.90 | $2.20 | $35.00 | $26.00 | $22.00 |
| Winston-Salem | 1.90 | 2.20 | 35.00 | 26.00 | 22.00 |

Petition for rehearing was filed by the Norfolk & Western, the Southern, and the Seaboard Air Line Railway Companies. Rehearing was denied. Thereafter the Norfolk & Western Railway Company, the Southern Railway Company, the Seaboard Air Line Railway, and the Louisville & Nashville Railroad Company, as petitioners, filed their joint petition in this court, and prayed for the annulment of the order of June 7, 1910. After setting forth the proceedings had before the Commission, petitioners allege substantially: (1) That the reasonableness of the rates of the Norfolk & Western from Roanoke and Lynchburg to Winston-Salem and Durham was not in issue before the Commission; (2) that the order of the Commission operates to defeat the purpose of the Commission as expressed in its report, because of a mistaken view by the Commission of the effect of its order; (3) that the order should be set aside because of an inconsistency which results in arbitrarily compelling the application of lower rates on certain traffic than the Commission found were reasonable; and (4) because the Commission erred and exceeded its authority in disregarding the interests of the carriers other than the Norfolk & Western. The Corporation Commission of North Carolina has intervened. The United States and the Interstate Commerce Commission filed answers, in which they denied certain averments and set up the proceedings before the Commission. Application for a preliminary injunction was denied by this court. Thereafter evidence was heard before one of the judges of the court, and the case is now here upon a final hearing.

The Norfolk & Western Railroad extends from Cincinnati and Columbus on the west to Norfolk, Va., on the east, and to Hagerstown, Md., on the north. One of its divisions extends from Radford, Va., to Bristol, Tenn.; another south from Roanoke, Va., to Winston-Salem, N. C., a distance of 122 miles; another division extends south from Lynchburg, Va., to Durham, N. C., a distance of 117 miles.

Lynchburg is 54 miles east of Roanoke on the main line. The Southern Railway runs to Durham and Winston-Salem. It has its own rails into Louisville, St. Louis, and Evansville, from which points in connection with other roads it operates in the Carolina territory and into Winston-Salem and Durham. The Seaboard Air Line reaches Durham from the north. The Louisville & Nashville Railroad runs from Cincinnati to New Orleans, with a division extending to Norton, Va. It also runs from Nashville to St. Louis. Traffic over its lines to the Virginia cities is handled in connection with the Norfolk & Western via the Norton gateway, and in connection with the Chesapeake & Ohio through the Louisville gateway, and in connection with the Southern through Jellico, Tenn. The Norfolk & Western, with its connections, is the short line from Chicago to Winston-Salem and Durham. From Louisville, Cincinnati, and East St. Louis, the short line to most Carolina points is via the Louisville & Nashville, and the Southern and its connections. Rates by this route from Chicago and East St. Louis to Carolina territory are made upon combinations which do not exceed the Virginia cities combinations. From Louisville and Cincinnati through rates are made by using proportional rates to Virginia cities, plus locals beyond, the proportionals equaling the differences between the Chicago rates to the Virginia cities and the locals from Chicago to Cincinnati. The Commission makes the situation clear by giving the proportional rates on the numbered classes in cents per 100 pounds, as follows:

| Class | 1 | 2 | 3 | 4 | 5 | 6 |
|-------|---|---|---|---|---|---|
| Rate | 32 | 28 | 22 | 15 | 12 | 10 |

The Commission exemplifies by taking the Chicago-Virginia cities rate on first class, which is 72 cents per 100 pounds, and the Chicago-Cincinnati local, which is 40 cents, and finds the proportional rate to be the difference, which is 32 cents. By adding this proportional to the local from Virginia cities to Winston-Salem and Durham, the through rate from Cincinnati and Louisville, first class, was made 93 cents. The proportionals as used by the Commission applied to grain and packing house products were, respectively, 11 and 15 cents. It appears that afterwards the proportionals were taken out, and thus the combination was the local rate to the Virginia cities plus the rate fixed by the Commission.

[1] Considering the first point made by petitioners, that the reasonableness of local rates between Roanoke and Winston-Salem, and between Lynchburg and Durham, was not in issue before the Commission, we find the allegations of paragraph 13 of the complaint before that body as follows:

"(13) That the published and exacted rates between stations in Virginia and West Virginia along the line of the Norfolk & Western Railway and stations in what is known as the Durham and Winston Divisions, along the lines of said railway in North Carolina, as is shown by Tariff I. C. C. No. 3156, North Carolina Interstate No. 1, are unjust and unreasonable in and of themselves, and unduly discriminatory against the said points in North Carolina."

The third and fourth clauses of paragraph 12 of the joint and several answer of the Norfolk & Western and the Louisville & Nashville Companies, filed before the Commission, read as follows:

"Respondent the Norfolk & Western Railway Company denies that the published and exacted rates between stations in Virginia and West Virginia along the line of respondent, and stations on what are known as the Durham and Winston divisions, along the lines of its railway in North Carolina, are unjust or unreasonable in and of themselves, or unduly discriminatory against the said points in North Carolina.

"Respondent the Louisville & Nashville Railroad Company, not being in position to participate in the traffic between the points referred to in paragraph 13 of the complaint, does not therefore deem it essential to either deny or affirm the allegations as contained therein."

Examination of Tariff I. C. C. No. 3156, Norfolk & Western Railway Company, effective November 15, 1907, shows on its face that it contains the rates applicable to shipments from Roanoke and Lynchburg, Va., to Winston-Salem and Durham, N. C.

The complaint also sets forth the routes from designated western cities, Cincinnati, St. Louis, and others, to Winston-Salem, Durham, and other places in North Carolina, and to Roanoke, Lynchburg, Petersburg, and Norfolk, in Virginia, called the Virginia cities. In the exhibits made part of the complaint were the published and exacted rates from these western cities to the Virginia cities on certain numbered and lettered classes and commodities shown on the schedule attached to the complaint; and the rates from the western cities named to Winston-Salem, Durham, and other places in North Carolina on the numbered and lettered classes and on certain commodities were also made part of the complaint. It was specifically charged that merchants and shippers in the Virginia cities have a preference and advantage over merchants, manufacturers, and shippers at Winston-Salem, Durham, and other places in North Carolina in the distribution of products, commodities, and merchandise, and that, under the unjust and unreasonable adjustment of rates and charges, merchants and dealers and others at Winston-Salem, Durham, and other North Carolina places have been unable to compete with the Virginia cities in the reshipment of merchandise and manufactured goods in the territory contiguous to Winston-Salem, Durham, and other places in North Carolina. As part of the complaint, an exhibit showed that the short-line distances by rail from the western cities to the Virginia cities and to Winston-Salem, Durham, and other places in North Carolina were over the rails of the Norfolk & Western. It was alleged that the rates and charges of the defendants for the transportation of the various kinds and classes of property to Winston-Salem, Durham, and other places in North Carolina, from the western cities, were unreasonable and unjust in and of themselves, and relatively, as compared with the rates and charges from the same points to the said Virginia cities, and that the said rates were unjustly discriminatory and prejudicial; that the rates and charges upon shipments originating at western cities destined to Winston-Salem, Durham, and other points in North Carolina are at a much greater rate per ton per mile than the rate per ton per mile on shipments destined to the Virginia cities; and

that for the distances in North Carolina or over that portion of the distance south of the Virginia cities named the rate per ton per mile is still greater than the rate from the point of origin to the said Virginia cities, and that the rates over that portion of the Norfolk & Western in North Carolina are higher than those over any portion of this line. The schedules of rates were referred to in support of the petition.

Taking all these averments, and considering that there is specific mention of the Durham and Winston-Salem divisions of the Norfolk & Western, and that the local rates were necessarily included in the through rates, as the local formed a large part of every through rate to the North Carolina points, it is easily gathered that the local rates were involved in the issues. It may be that, if there had been a challenge to the complaint upon the ground that it was lacking in particularity, amendment might have been ordered; but, considering that liberality of statement which is allowed in pleadings before the Commission, the investigation into such local rates was authorized. C. H. & D. R. R. Co. v. Interstate Commerce Commission, 206 U. S. 142, 27 Sup. Ct. 648, 51 L. Ed. 995; Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753.

[2] The next contention is, in substance, that it appears from the report of the Commission that it adopted a mistaken view, and that this mistaken view was of such a character as to have vital effect upon its findings; and hence that this court has the power, and should correct the error so made. This contention is based upon the report of the Commission, wherein it was assumed that:

"The present method of constructing through rates by the defendant carriers from Chicago, St. Louis, and Louisville, and by the Norfolk & Western Railway Company from Columbus, Ohio, to Winston-Salem and Durham, respectively, would be continued."

"It is our view," the Commission observed, "that such injustice in the rates from these points of origin to the destinations involved as may result from the present excessive rates of the Norfolk & Western Railway Company from Cincinnati will be removed, and that for the present at least no order need be made as to the traffic moving from the said points of origin other than from Cincinnati."

Petitioners urge that the Commission, in prescribing maximum through rates from Cincinnati to Winston-Salem and Durham, disregarded the "present method" alluded to, such method being the construction of a through rate on any given article of traffic from a western city to Winston-Salem or Durham by adding a fixed proportional of the rate proper between the western city and the Virginia city to the local between the Virginia city and the North Carolina destination; and, further, that, by naming figures which no not represent combinations made in the way just described, the relation sought to be maintained between Louisville and western points other than Cincinnati cannot be preserved. The Norfolk & Western established the rates from Cincinnati as prescribed by the order, but no reduction of rates has been made by any of the other carriers. These rates before the execution of the order were the same from Louisville to Winston-

Salem and Durham as from Cincinnati to those points. Now it is argued that if the method of construction recognized by the Commission should be used in making new rates from Louisville—that is to say, adding the proportionals which are employed as a factor under the present method to the new locals from the Virginia cities to Winston-Salem and Durham—the rates from Louisville will become less than the rates fixed for the Norfolk & Western from Cincinnati, although the distance is greater. But, granting that the order which runs only against the Norfolk & Western does affect rates on other roads carrying from other points than Cincinnati, there is no sufficient reason advanced upon which this court may enjoin against the order of the Commission. Of course, adjustments of rates oftentimes do have effect upon adjacent territory. These matters, however, were considered and expressly referred to by the Commission in its report, saying:

"We are not unmindful that it is our duty to consider rates applied over the entire territory likely to be affected by a change in rates to particular points. It is doubtless true that a reduction in rates to Winston-Salem and Durham to the Virginia cities basis would disarrange the whole system of rates now based thereon and made with reference thereto. We have heretofore found that conditions at Winston-Salem and Durham do not justify the extension to them of the Virginia cities rates. This is not equivalent, however, to a finding that rates to Winston-Salem and Durham are reasonable. * * *"

The conditions described would seem to be inevitable, yet they are far from being a valid reason for defeating the regulation of the particular rates which were under direct investigation. Ordinarily, rates not involved in the inquiry before the Commission will adjust themselves to the conditions brought about by the order, but even though the assumption that they will adjust themselves is erroneous, and the basis for the assumption involves a mistaken factor as to such other rates, still it does not necessarily lead to the conclusion that the regulation of the rate directly involved in the order is invalid, or that the order fixing such a rate should be annulled by judicial authority, provided always the rate so directly involved and fixed is reasonable and just for shippers and carriers, with relation to the particular destinations concerned.

It may be, too, that the lowering of a rate between two distant points will result in rates to intermediate points over the same line being inconsistent with the provisions of section 4 with reference to the long and short haul clause of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155]), but, if so, there presumably is occasion for reducing such rates to intermediate points. In order to sustain reasonable rates to intermediate points, unreasonable rates between more distant points cannot be sustained.

[3] It is not for us to say whether the Commission has properly attached great or little weight to evidence adduced upon a given point, or whether the conclusion reached by the Commission upon testimony as to facts alone shows mistake as to some particular fact not essential or vital to the proceeding, or inadvertency, or is not such a conclusion as this court might have reached. If the particular matter in

issue and inquired into was one of fact and a full hearing was afforded, and the conclusion reached is supported by substantial evidence, it will not be nullified by the courts. Interstate Commerce Commission v. Union Pacific R. R. Co. et al., 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. ——.

[4] Special attention is addressed to grain rates. The Commission found no justification upon the facts appearing for condemning as unreasonable or otherwise unlawful the commodity rates on grain east bound in car loads. Petitioners point out that the grain rate from Cincinnati to Winston-Salem and Durham as thus approved was 28½ cents per 100 pounds, that the commodity rate on grain in car loads from Cincinnati to Roanoke and Lynchburg is 14 cents, and that the any quantity rate prescribed from Roanoke and Lynchburg to Winston-Salem and Durham is 13 cents, making a total of 27 cents, and it is said that under the fourth section as amended, carriers being compelled to observe the combination of intermediate rates, the Norfolk & Western has found it necessary to publish a rate of 27 cents. From this it is argued that, although 28½ cents was given "the stamp of reasonableness" by the Commission as the grain rate from Cincinnati to Winston-Salem and Durham, compliance with the order results in a rate of 27 cents. The testimony heard in this court upon the issues presented goes to show that the Cincinnati-Roanoke grain rate of 14 cents was compelled by competition with the Chesapeake & Ohio, and that with the 14-cent rate from Cincinnati to Roanoke and Lynchburg, the Commission having prescribed the 13-cent local rate, the Norfolk & Western had no alternative other than to make a through rate to Winston-Salem and Durham of 27 cents. About 15 per cent. of the traffic hauled by the Norfolk & Western to Winston-Salem and Durham is grain. Carrying out the argument, it is said that other carriers of grain to the North Carolina destinations must make their rates correspond to the 27-cent rate of the Norfolk & Western, and suffer the reduction of revenue inevitably to follow. In this connection the evidence shows that of the Seaboard Air Line traffic from the west in 1910, 55 per cent. was grain and grain products delivered at Durham, while only about 30 per cent. of such products was delivered there in 1911. It would seem, however, that there is nothing to prevent the carriers interested from going before the Commission, and asking that they be allowed to make a through grain rate of 28½ cents, instead of 27 cents, which is the combination of the local rates. Apparently there is no restriction upon the power of the Commission to determine such a question, in view of the peculiar situation with reference to the Virginia cities rates. But without deciding whether or not the Commission, under section 4 of the act to regulate commerce as amended in 1910 (Act June 18, 1910, c. 309, § 8, 36 Stat. 547 [U. S. Comp. St. Supp. 1911, p. 1288]), is authorized to allow a through rate which is higher than the aggregate of the intermediate rates, it cannot be successfully disputed that the order of the Commission reducing the rates from Lynchburg and Roanoke to the North Carolina points involved to 13 cents for the distances—122 miles to Winston-Salem and 117 miles to Durham—

was in itself the fixing of a reasonable and just rate. Assuming that the rate from Cincinnati to Roanoke and Lynchburg is forced by competition to an unreasonably low point, still the carrier has no right to complain because it cannot maintain an unreasonably high rate between Roanoke and Lynchburg and Winston-Salem and Durham.

[5] Stress is laid upon what is called a "misconception" of the relation of other carriers to the western business, in that the Commission stated that the carriers which intervened before it did not "in any significant amount participate in traffic to Winston-Salem and Durham from the points in question." Again we encounter what was a question of fact. The report of the Commission refers to the pressure upon the attention of the Commission of the "possibility of disaster" to the interests of the intervening carriers if the prayer of the petition should be granted. Evidently there was evidence showing that besides the Norfolk & Western, the Louisville & Nashville, the Southern, and the Seaboard Air Line Railroads participated in the traffic. In the motion for a rehearing the moving parties recognized this, saying;

"While there is no detailed evidence on the subject in the record, it was made to appear that the intervening carriers are very largely interested."

True, in this court it was testified that in 1910, for instance, the Louisville & Nashville delivered at Norton 44.3 per cent. of the total tonnage delivered at Winston-Salem by the Norfolk & Western, and in 1911 28.8 per cent., and that in 1910 of the total tonnage delivered by the Norfolk & Western at Durham 49.2 per cent. was received from the Louisville & Nashville at Norton, and in 1911 39.1 per cent., and it was the opinion of the traffic manager of the Norfolk & Western that this decrease in the Norton percentage was accounted for by the lowering of the rates below the Louisville & Nashville rates via Norton. The testimony also tended to show that in September, 1910, the Southern delivered at Durham 384.993 pounds of the western traffic, and in September, 1911, only 256,090 pounds, and to Winston-Salem proper from Cincinnati and passing through Cincinnati in September, 1910, via the Southern the movement was 332,-413 pounds, and in September, 1911, 120,104 pounds, and that from and via Cincinnati and from and via other Ohio river crossings said to be affected by the reduced rates the movement via the Southern in September, 1910, was 2,213,711 pounds, and in September, 1911, 1,609,611 pounds. There was also evidence tending to show that certain business that formerly moved into Durham from Petersburg and Richmond over the Seaboard Air Line now moves from Lynchburg by reason of the reduction ordered by the Commission. We must remember, however, that the Commission was expressing its opinion upon the evidence which was before it when it made the order of June 7, 1910; hence so much of the evidence as shows that a volume of business which these other lines once had has been lost since the order of the Commission went into effect is not helpful in getting at the exact meaning of the term "significant amount" as used by the Commission. Some substantial participation having been proved be-

fore the Commission, whether the extent of it was worthy of being characterized as "significant" became a matter of inference from facts, and it is beyond the power of this court to say that as a matter of law the order must fall because of such characterization.

We observe this express language of the Commission in its report:

"We have considered these rates from the viewpoint of distance and transportation conditions, by the amount of revenue received, as shown by per ton-mile calculations, and drawn into consideration all matters which in any way relate to traffic between the points involved."

The petition for a rehearing set forth with care the grounds upon which the petitioners conceived the Commission had erred and misapprehended facts. The rehearing was denied, and no cause is made to appear to us for believing that the conclusions of the Commission should be disturbed.

The rates ordered to be put in force by the Norfolk & Western being reasonable, we cannot say that because other roads have not met the reduced rates and are losing traffic as a consequence the order of the Commission should be interfered with.

Decree for respondent.