See also, D.C., 629 F.Supp. 713.

James BENJAMIN, et al., Plaintiffs,

v.

Benjamin J. MALCOLM, Commissioner of Correction of the City of New York; et al., Defendants,

v.

Mario CUOMO, et al., Third-Party Defendants.

No. 75 Civ. 3073 (MEL).

United States District Court, S.D. New York.

Jan. 30, 1986.

Theodore H. Katz, Dale A. Wilker, Jonathan S. Chasan, Legal Aid Soc., Criminal Appeals Bureau, Prisoners' Rights Project, New York City, for plaintiffs.

Frederick A.O. Schwartz, Jr., Corp. Counsel, New York City, for defendants; Leonard Koerner, Litigating Asst. Paul Rephen, of counsel.

Robert Abrams, Atty. Gen. of N.Y., New York City, for third-party defendants; Barbara B. Butler, Asst. Atty. Gen., of counsel.

LASKER, Senior District Judge.

This class action concerns overcrowding in the House of Detention for Men on Rikers Island ("HDM"). Three years after relief was granted against the state defendants in this case, the United States Supreme Court decided the landmark case of *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("Pennhurst II"), holding that federal courts have no jurisdiction to enjoin state officials on the basis of a state law violation. Relying on that authority, Governor Mario Cuomo[1] and Thomas A. Coughlin III, Commissioner of the New York State Department of Correctional Services ("the State defendants") move to vacate the order of August 20, 1981 requiring the State to accept "state ready" inmates within forty-eight hours after processing and to dismiss the State defendants on the ground that this Court lacks subject matter jurisdiction. For the reasons set forth below, the motion is granted.

On September 28, 1979 Benjamin J. Malcolm, Commissioner of Correction of the City of New York, and other City officials (collectively "the City defendants" or "the City") entered into a "Stipulation for Entry of an Order" with the inmates "to secure plaintiffs' rights to be housed under constitutional conditions." By opinion dated August 27, 1980[2], it was held on the basis of the parties' stipulation that HDM was unconstitutionally overcrowded and, on the basis of additional evidence presented, the City was ordered not to house more than 1,200 inmates at HDM. *Benjamin v. Malcolm*, 495 F.Supp. 1357 (S.D.N.Y.1980).

Although the City defendants conceded that HDM was overcrowded, they took the position early in the litigation that the overcrowding was partially attributable to the presence of inmates who properly should have been in the State's custody and that the State's failure to assume responsibility for the confinement of the inmates was restricting the City's ability to comply with court orders. By order to show cause on June 4, 1981 the City moved to join the State defendants as indispensable parties pursuant to Fed.R.Civ.P. 19 and 20.

After evaluating what we determined were the controlling factual considerations, the City's motion was granted.[3] Moreover, relying upon the prudent jurisprudential approach of not deciding constitutional questions when an adequate state law basis

---

**1.** Mario Cuomo in his official capacity has been substituted for his predecessor pursuant to Fed.R.Civ.P. 25(d)(1).

**2.** An earlier motion to join the State defendants was denied without prejudice because it appeared at the time that the State and the City would be able to resolve their differences through the State's voluntary cooperation. *See Benjamin v. Malcolm*, 88 F.R.D. 333, 336 (S.D.N.Y.1980).

**3.** The considerations included:
"The question of public safety;
The relative impact of the Court's decision on the respective systems;

The relative efforts of the systems themselves to discharge their duties and to solve the problems;
The relative physical space available to the systems, both in terms of beds and in terms of acreage;
The existence of programs or their future availability;
The difference between conditions which exist in detention centers in general and prisons in general."
*Benjamin v. Malcolm*, 528 F.Supp. 925, 929 (S.D.N.Y.1981).

for relief exists, we concluded that New York law clearly obligated the State to do what the City was requesting:

> There is no doubt that the situation in the state system is a grave situation, as it also is in the city system. However, with regard to the question of legal obligation of the parties it is the legal obligation of the state to remove state readies forthwith, as the statute says [referring to N.Y.Crim.P.Law § 430.20 (McKinney 1983)].

Transcript at 129 (July 29, 1981).

The State defendants were instructed to accept inmates from HDM within forty-eight hours of their becoming state readies, and on August 20, 1981 an order was issued to that effect.[4] It is this order which the State defendants seek to vacate through the instant motion.

The State defendants argue that the 1981 order must be vacated because *Pennhurst II* prohibits a federal court from ordering state officials to comply with state law and that the Eleventh Amendment permits a federal court to enjoin the actions of state officials only when the officials are acting unconstitutionally. In this case, they maintain, the only assertion that the United States Constitution has been violated is plaintiff's Eighth Amendment claim against the City, and there is no cause of action by either plaintiffs or the City against the state for depriving the plaintiffs of their constitutional rights. Moreover, citing such classic decisions as *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), and *Warth v. Seldin,*

422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the State defendants argue that the City is precluded from raising such a claim because it lacks the requisite standing to do so.

The City defendants vigorously contest the State's construction of *Pennhurst II.* Relying primarily on our suggestion in a previous decision that the State's behavior may be of constitutional significance,[5] the City answers that "this Court's determination to join the State defendants and to impose a remedy against them was designed to effectuate the constitutional rights of the plaintiffs and secondarily involved a discussion of state law." Defendants' Memorandum of Law at 7 (Feb. 27, 1985). *Pennhurst II*, as the City interprets it, is not controlling where, as here, the State defendants' presence in the litigation is needed to promote the vindication of federal rights.

Plaintiffs, on the other hand, view the dispute as one between the City and the State and have not formally responded to the motion except to submit a letter-brief in which they substantially agree with the City's analysis of the law and the background facts. The heart of plaintiffs' position was expressed as follows:

> Our consistent concern in this litigation has been compliance with this Court's Orders that require constitutionally acceptable population levels in the City jails, regardless of the outcome of disputes between the City and State regarding their respective responsibilities for various categories of inmates. The outcome of the pending motion should not,

---

**4.** Shortly thereafter the State defendants moved to be relieved temporarily from the order's mandate. The motion was denied on several grounds: (1) that there existed no legal justification for releasing the State defendants from their obligations since they had not met the standard of *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), for relief from a judgment pursuant to Fed.R.Civ.P. 60(b)(6) and because the obligations from which the State sought release were established, in the first instance, not by the August 20th judgment but by N.Y.Crim.P.Law § 430.20 (McKinney 1983); (2) that re-examination of the

factors first enumerated in the opinion of July 29, 1981 revealed no change in the factual circumstances which justified granting the motion; and (3) finally, the motion was denied because:

> in the last analysis what the State proposes here is to equalize unconstitutionality by requiring the City to share the burden of impermissible overcrowding with the State. The remedy does not lie in equalizing the unconstitutionality but in eliminating it.

*Benjamin v. Malcolm,* 528 F.Supp. at 929–30.

**5.** *See* n. 4, *supra.*

we believe, have any bearing on the City's liability under those Orders.

Letter of Theodore H. Katz, et al. (Feb. 28, 1985). Plaintiffs have never asserted any claims against the State defendants and have indicated that they have no present intention of doing so.

### A.

Resolution of the issue at hand requires a determination as to the reach of *Pennhurst II.* Any such analysis would be incomplete without consideration of that litigation's history.

In *Pennhurst II* mentally retarded citizens brought a class action against various Pennsylvania state and county officials challenging the fact and conditions of their institutional confinement. The District Court held that the conditions of Pennhurst State School and Hospital violated plaintiffs' rights under the Eighth and Fourteenth Amendments, Section 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, 29 U.S.C. § 794 (1976 & Supp. V), and the Pennsylvania Mental Health and Mental Retardation Act of 1966, Pa.Stat. Ann., tit. 50 §§ 4101–4704 (Purdon 1969 & Supp.1982).

The Court of Appeals for the Third Circuit substantially affirmed the District Court's ruling, 612 F.2d 84 (3d Cir.1979) (en banc), but grounded its conclusion that plaintiffs had a right to habilitation in the least restrictive environment solely on the "bill of rights" provision in the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010 (1976). The Supreme Court reversed the judgment of the Court of Appeals holding that 42 U.S.C. § 6010 did not create any substantive rights. The case was remanded to the Court of Appeals "to determine if the remedial order could be supported on the basis of state law, the Constitution, or Section 504 of the Rehabilitation Act." *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 31, 101 S.Ct. 1531, 1547, 67 L.Ed.2d 694 (1981).

On remand the Court of Appeals never reached the remaining issues of federal law, instead concluding (en banc) that the state statute fully supported its earlier judgment. 673 F.2d 647 (3d Cir.1982). In upholding the prior judgment the Court of Appeals rejected the State defendants' arguments that the Eleventh Amendment barred a federal court from considering the State law claim. Relying on *Siler v. Louisville & Nashville R.R. Co.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909) ("an important case in the development of the doctrine of pendent jurisdiction," *Pennhurst II,* 104 S.Ct. at 905), the Court of Appeals determined that the Amendment did not bar a federal court from granting prospective relief against state officials on the basis of a pendent state-law claim:

> The Supreme Court's remand for further consideration of the federal constitutional questions establishes as law of the case for this court the substantiality of the federal question supporting jurisdiction.

673 F.2d at 658–59.

The Supreme Court disagreed. *Pennhurst,* the Court reasoned, was distinguishable from the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (federal court may enjoin state official from enforcing unconstitutional statute), because unlike *Young,* the need to reconcile the promotion of the supremacy of federal rights with the constitutional immunity of the States "is wholly absent ... when a plaintiff alleges that a state official has violated *state* law." *Pennhurst II,* 104 S.Ct. at 911 (emphasis in the original). The Court accordingly concluded:

> a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here— the relief sought and ordered has an impact directly on the State itself.

*Id.* at 917.

Further, rejecting plaintiffs'-respondents' numerous public policy arguments,[6] the majority held that

---

6. Plaintiffs-respondents argued that " 'considera-

tions of judicial economy, convenience, and

neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment. We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

*Id.* at 919.

\*    \*    \*    \*    \*    \*

■ The sweeping prohibition pronounced in *Pennhurst II* appears even stronger when·one considers that the decision struck down federal jurisdiction on Eleventh Amendment grounds in the face of federal constitutional and statutory claims asserted by the plaintiffs and despite the district court's finding that plaintiffs' Eighth Amendment rights, the right to due process and rights under various federal laws had been violated. Beyond question, *Pennhurst II* significantly restricts the authority of a federal court to order relief against state officials. The facts in the case before us do not fall squarely within the holding of the decision. Nevertheless, for the reasons set forth below, we conclude that the decision is controlling and that it compels vacating the August 20, 1981 order.

In the instant action, the plaintiffs' successfully adjudicated constitutional claims were not asserted against the state defendants. It is true that, as in *Pennhurst II,* there were significant federal questions lurking in the background when the City moved to join the State defendants in the litigation. However, in granting the motion we explicitly stated our reliance upon state law as providing the legal basis for granting the relief.

Moreover, since our consideration of the State defendants' role was in the context of a motion pursuant to Fed.R.Civ.P. 19 the standard was whether complete relief could be granted if the state defendants were absent from the litigation. A determination that the City could not fulfill its obligations to avoid violating the plaintiffs' constitutional rights without some action by the state may be *evidence* that the State defendants' conduct carried constitutional ramifications. However, it is not an *adjudication* that "the acts or omissions of the State defendants have caused or contributed to a violation of the constitutional rights of the plaintiffs to a degree sufficient to provide a basis for relief against the State defendants." *Badgley v. Varelas,* 729 F.2d 894, 901, n. 8 (2d Cir.1984).

■ Absent such an adjudication, acceptance of the City's argument would establish jurisdiction on a basis that is perilously close to the holding of the Third Circuit Court of Appeals in its (second) consideration of *Pennhurst.* The Court of Appeals there held that pendent *claim* jurisdiction empowered the Court to grant relief against the state defendants. In the present posture of the case at hand ordering relief against the state officials would be analogous to establishing jurisdiction on a pendent *party* basis.[7] Both propositions lack the nexus between the state defendants and a federal violation which *Pennhurst II* apparently requires. In any event, the Supreme Court rejected the proposition that the "judge-made doctrine" of pendent (claim) jurisdiction was not susceptible to the Eleventh Amendment's pro-

fairness to litigants' that underlie pendent jurisdiction [citation omitted] counsel against a result that may cause litigants to split causes of action between state and federal courts; ... that the policy of avoiding unnecessary constitutional decisions will be contravened if plaintiffs choose to forego their state-law claims and sue only in federal court or, alternatively, that the policy of *Ex parte Young* will be hindered if

plaintiffs choose to forego their right to a federal forum and bring all of their claims in state court." *Pennhurst II,* 104 S.Ct. at 919.

7. The reference to "pendent party" jurisdiction is only an analogy because Fed.R.Civ.P. 19 cannot provide subject matter jurisdiction where it does not otherwise exist.

hibitions. *Pennhurst II,* 104 S.Ct. at 919. The conclusion applies with equal force to the doctrine of pendent party jurisdiction: "neither pendent [claim] jurisdiction, *nor any other basis of jurisdiction* may override the Eleventh Amendment." *Id.* (emphasis supplied);[8] *see Oneida County, N.Y. v. Oneida Indian National of New York State,* —— U.S. ——, 105 S.Ct. 1245, 1260–61, 84 L.Ed.2d 169 (1985).

### B.

Both parties rely on *Badgley v. Varelas,* 729 F.2d 894 (2d Cir.1984), to support their respective positions. The *Badgley* plaintiffs, a group of inmates at the Nassau County Correctional Center ("NCCC"), settled their dispute by agreeing with the County defendants to entry of a consent judgment specifying the remedial action that would be taken to alleviate overcrowding. Thereafter, the District Court ordered local and state officials to transfer inmates out of the NCCC to secure compliance with the terms of the consent judgment. However, on appeal, since the State defendants had not agreed to the entry of the consent judgment; there had not been an adjudication that any state official had violated the plaintiffs' constitutional rights; there was an adequate remedy that could be directed solely to the parties who signed the consent judgment; and the Supreme Court (in *Pennhurst II*) had just rendered a "significant opinion circumscribing the authority of a District Court to enjoin state officials from acting in violation of state law" [citation omitted] the Court of Appeals of this Circuit held that it was "inappropriate [for the District Court] to order any relief [against the state officials] at this time." *Badgley v. Varelas,* 729 F.2d at 901.

There are obvious factual similarities between *Badgley* and the present lawsuit. However, interpreting that decision as holding that a district court may not enter "state ready" orders against state officials unless plaintiffs claim that the officials have violated their constitutional rights, as the State defendants do, stretches the language in the opinion too far. Certainly the Court of Appeals recognized *Pennhurst II*'s potential impact on the *Badgley* litigation. But the Court deliberately refrained from filling in the interstices of the Supreme Court's newly rendered decision. Indeed, the *Badgley* Court specifically declined to decide

> [w]hether *Pennhurst II* leaves any room for a District Court decree directed against state officials whose actions may be necessary to implement, or at least to avoid the frustration of, a judgment that does not rest on a determination of a constitutional violation.

*Id.* It is this open question which the City defendants urge us to resolve in their favor.

The City defendants correctly point out that the Supreme Court distinguished *Pennhurst II* from *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, on the basis that ordering relief against the state officials in *Pennhurst II* would not promote the vindication of federal rights. Relying on this distinction they argue that this action falls under the *Young* doctrine (and that it is therefore not barred by the Eleventh Amendment) because here the State defendants' actions significantly contributed to the violations of plaintiffs' constitutional rights.

The City's argument may well have merit.[9] Nevertheless, the question is not

---

**8.** In view of this statement it is doubtful that the All Writs Act, 28 U.S.C. § 1651 (1982), may override the Eleventh Amendment. *In re Baldwin-United Corporation,* 770 F.2d 328, 340 (2d Cir.1985) ("The All-Writs Act ... cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment.")

**9.** We have uncovered no decision which answers this argument directly. There is support

for the proposition that *Pennhurst II* is not a bar when State conduct violates *both* State and federal law. *See David D. v. Dartmouth School Committee,* 775 F.2d 411 (1st Cir.1985); *Geis v. Board of Education,* 774 F.2d 575 (3d Cir.1985); *Barnes v. Cohen,* 749 F.2d 1009 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985); *Students of California School for the Blind v. Honig,* 736 F.2d 538 (9th Cir.1984).

whether the argument has merit but whether it is the basis upon which our earlier decision depended—and it is not. The earlier decision explicitly relied on state law only. It would not be proper to substitute, *nunc pro tunc*, a determination that the State defendants violated the plaintiffs' constitutional rights, except upon full litigation of that question. No such cause of action has been asserted. Nor has there been a determination that the state officials' actions are so inexorably tied to the constitutional violation that the court has jurisdiction to order relief. This, we conclude, is the minimum that *Pennhurst II* requires. *Cf. Tate v. Frey*, 735 F.2d 986, 990 (6th Cir.1984) (per curiam) (requiring the district court to make findings of fact consistent with *Pennhurst II* before issuing a permanent injunction against state officials).

### C.

*Tate v. Frey*, 735 F.2d 986 (6th Cir.1984), does not alter our conclusion in this regard. In *Tate*, state correction official defendants appealed from the grant of a preliminary injunction requiring them to reduce the number of convicted felons who were incarcerated in the county jail and were awaiting transfer to state facilities, and enjoined the State defendants from permitting any convicted felons to remain in the jail for more than thirty days from the imposition of sentence.

The Court of Appeals for the Sixth Circuit held that the grant of an injunction did not constitute an abuse of discretion and that *Pennhurst II* did not render the injunction improper.

> It is obvious ... that the district court premised the grant of the preliminary injunction upon constitutional grounds and not state law. Acknowledging that the preliminary injunction, by its very nature is merely interlocutory, the district court should be extended the opportunity to develop more fully the facts and circumstances peculiar to the case *sub judice* when the motion for permanent injunction against the third party

defendants is heard, taking into consideration the impact of the Supreme Court's decision in *Pennhurst* upon any permanent relief the district court may deem appropriate.

*Tate v. Frey*, 735 F.2d at 990.

This case is readily distinguishable from *Tate* because here, the August 20, 1981 order was grounded upon N.Y.Crim. Proc.Law § 420.30. Moreover, since the *Tate* appellate court abstained from "any comprehensive discussion or review of the merits of the case beyond the bare essentials necessary to determine if the trial court exceeded reasonable discretion in rendering preliminary relief," *id.*, to characterize *Tate* as holding that *Pennhurst II* is inapplicable when the actions of the State defendants affect constitutional rights is at least premature.

### D.

Throughout the litigation we have stated that it is not apparent that the City will be able to fulfill its obligations without an order from the court directing the State defendants to take some action. Our decision should not be construed as abandoning that sentiment or as expressing the opinion that all means through which the City may obtain appropriate relief are foreclosed. We have not held, nor do we now, that acts or omissions which frustrate the vindication of a federal right can never be significant enough to create a sufficient basis for jurisdiction over state officials.

Plaintiffs, of course, are not precluded from seeking relief from the state. *See Badgley v. Varelas*, 729 F.2d at 901. Regardless of the plaintiffs' stance, Fed.R. Civ.P. 19 contemplates that under certain circumstances a district court may order the joinder of adverse parties, *see, e.g., Macklin v. Butler*, 553 F.2d 525, 531 (7th Cir.1977); *accord Sitchenko v. Diresta*, 512 F.Supp. 758, 763 (E.D.N.Y.1981), or dismiss an action in the event that an indispensable party cannot be joined, *Envirotech Corporation v. Bethlehem Steel Corporation*, 98 F.R.D. 250 (S.D.N.Y.1983), *aff'd*, 729 F.2d 70 (2d Cir.1984), and the

City may wish to explore whether a request for such relief would be appropriate.

■ Since there are options remaining which may operate to bring the State defendants back into the lawsuit if they were to be presently dismissed, it is appropriate to defer vacating the order of August, 1981 for thirty days pending a determination of the parties' further intentions. *Cf. Pennhurst II*, 104 S.Ct. at 921 (remanding for consideration of federal claims).

The motion is granted; vacatur of the August 20, 1981 order and dismissal of the State defendants is stayed for thirty days from the filing of this Memorandum.

It is so ordered.